# Richmond

SHEPPARD C. BELL AND SANDY TURNER v. CLARA KENNEY,
ADMINISTRATRIX, ETC.

January 18, 1943.

Record No. 2601.

Present, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*John C. Goddin, John G. May, Jr.,* and *Edward P. Simpkins, Jr.,* for the plaintiffs in error.

*Alexander H. Sands* and *H. M. Ratcliffe,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review a verdict and judgment for $3,500 rendered in an action against Sheppard C. Bell and Sandy Turner for the wrongful death of Katherine Kenney.

Sheppard C. Bell employed Sandy Turner, driver, and two helpers to haul 4,000 or more feet of lumber from Franklin to Charlottesville. On route 250, about seven miles west of Richmond, the truck collided with an eastbound Ford club coupe owned and driven by L. A. Jones. On the wide front seat with Jones and to his right sat Elizabeth Talley. To her right sat Howard Kenney, in whose lap sat Katherine Kenney. Henry Starke and Dorothy Price were riding in the back seat. The driver, Jones, and three of the passengers, Elizabeth Talley, Katherine Kenney and Henry Starke, were killed in the collision. Dorothy Price and Howard Kenney survived but were more or less severely injured.

While there are eight assignments of error, the dominant question presented is whether the evidence for plaintiff is sufficient to support a verdict finding defendants guilty of negligence.

The tractor-trailer involved was 40 feet long. The front or cab part was 10 feet long and 4½ feet wide. The

trailer was 30 feet long and 7½ feet wide. The empty truck weighed approximately 10,000 pounds. At the scene of the accident the hard-surfaced roadbed was 21 feet wide. The shoulders on the south were at least 6 feet wide, and the shoulders on the north only 6 to 18 inches wide. The highway curved south or to the left for westbound traffic. However, the angle of the curve was not so acute as to obstruct the view of operators of vehicles traveling in opposite directions for a distance of several hundred feet.

None of the four eye-witnesses who testified gave a very lucid account of the accident. Sandy Turner and his two helpers stated that they saw the lights of the automobile when it came over the hill several hundred feet from the point of impact, but that they did not notice anything unusual until the coupe was within 30 feet of them, when it swerved across the center of the highway. Turner immediately cut his wheels to the right, but he did not have time to drive his truck far enough to the right to avoid the collision.

Dorothy Price, the only surviving passenger in the coupe who testified, gave the following account of the accident: "Well, the first that I saw was when we were coming down Broad Street Road, coming into Richmond. This truck was coming, and the truck—the light was very bright and the driver, he never dimmed them, and we was on the right-hand side of the road, and he was in the middle of the road and never got over into it; he always stayed in the middle of the road, steered in the middle of the road. That is all I can tell you."

Other witnesses testified that they were at the scene of the accident that night or early the next morning. Several stated that the marks on the road, indicating the point of impact, were in the southern traffic lane or to the truck driver's left of the center of the highway. Some of the witnesses were positive that the marks were on the north side of the center line. Sandy Turner stated that on seeing the approaching automobile he dimmed or lowered his lights. He and his two helpers stated that the truck was traveling

on its side of the road and remained on its side until struck by the club coupe, and that all the marks on the highway were on their side of the road.

Defendants concede that there is a conflict in the evidence, but they contend that the conflict is created solely by the testimony of Dorothy Price, and that her testimony should be rejected because it is incredible.

It is argued that if Dorothy Price was doing what, on cross-examination, she said she was doing, then it would have been impossible for her to have seen what, in the paragraph quoted above, she said she saw. On cross-examination she said that immediately before the collision she was talking to and looking at her companion on the back seat. She thought she looked up as the truck approached. Notwithstanding her vague replies to questions propounded on cross-examination, she was not shaken in her statements to the effect that the headlights on the truck were not dimmed and that the truck was traveling in the middle of the highway on the wrong side of the road.

It is stated in defendants' brief that they have demonstrated by an experiment the inability of Dorothy Price to see and determine what she stated she saw on the night of the accident. In conducting this experiment defendants placed four persons on the front seat of an automobile and two on the back, and claimed that a person sitting on the back seat was unable to see whether the lights of an approaching car were dimmed or whether the approaching car was traveling on the right or left of the center of the highway.

The record does not disclose the weight, height and size of the passengers in the car, or the exact position of the witness on the back seat. While the positions of the passengers in the front seat are shown by the record, it is not stated whether they were sitting up straight or otherwise. The failure to mention these details, as well as the existence of other differences in conducting the test, mentioned by Mr. Justice Browning in *Ferguson* v. *Virginia Tractor Co.*,

170 Va. 486, 197 S. E. 438, render it irrelevant as evidence and without persuasive force as an argument.

The jury is the sole judge of the weight to be given the testimony of a witness. In determining his credibility, the jury considers his entire testimony, his demeanor while on the stand, his intelligence or his lack of intelligence, and his means of information. When a jury has passed upon the credibility of a witness in favor of one litigant over another, this court is bound thereby unless the testimony upon which the verdict is based is contrary to human experience and incredible. This record fails to show that the testimony of Dorothy Price is inherently incredible.

Defendants contend that the trial court erred in giving any instruction on the question of speed because there was no evidence tending to show that the truck was traveling at an illegal rate of speed.

It is true that the three occupants of the truck stated that they were traveling from 20 to 35 miles an hour at the time of the impact and that no one contradicted them on this point. However, the condition of the vehicles, the distance they traveled from the point of impact before coming to rest, and the condition of the bodies of the four occupants of the car who were killed, are mute evidence of the terrific force of the impact. A fair inference from these physical facts is that both vehicles were traveling at very high speed.

J. P. Pettyjohn, a police officer, testified that the club coupe was completely demolished. It was broken in four parts and scattered along the highway. The engine was torn from its fastenings on the chassis. The coupe struck and broke a telephone pole on the south side of the road and stopped about 10 feet off the highway and 25 steps from the point of impact. The photograph shows that the left front of the coupe was jammed into the front seat, and the radiator, fenders, hood, left-hand door and top were battered into junk. The truck, traveling slightly uphill, stopped 26 steps from the point of collision and was badly damaged. "The center axle of the tractor-trailer was

knocked clean out from under the load in the ditch, right-hand ditch, going west." Four 2x4 oak standards, that were used on the left side of the trailer to hold the load in place, were broken and ripped from their iron sockets. One of the two 25-gallon tanks strapped on the side of the chassis was knocked off the truck, caught fire and burned. The left front wheel of the truck was torn from the axle, the axle driven back under the truck, and the lumber, placed between eight 2x4 oak standards and bound to the truck by two log chains, was knocked off the truck and scattered along the highway. Four of the occupants of the coupe were instantly killed. The head of one was severed from the body, the arm of another was stripped from the shoulder. The bodies and their dismembered parts were found lying on or near the highway. These physical facts, conceded to be true, are more eloquent and convincing as to the speed of the two vehicles than the *ipse dixit* of any witness.

Assignment of error No. 7 is based on the refusal of the trial court to instruct the jury on the question of the contributory negligence of Katherine Kenney.

It is conceded that the negroes in the coupe had left Richmond about twenty minutes before the collision and that the coupe had turned around at Tilly's Kitchen, approximately one-half mile west of the scene of the accident, and started back to Richmond. A Mrs. Cox, who lives at Tilly's Kitchen, stated that, before the accident, two cars turned around at her place of business and moved east towards Richmond. One of the cars made the turn traveling at 40 to 45 miles per hour, and, two minutes before the crash, it passed out of her line of vision traveling 70 miles an hour. This witness could not or did not identify the car or the people in it.

The burden was on defendants to prove contributory negligence by a preponderance of the evidence, and not on the plaintiff to prove that her decedent exercised due care for her own safety. No inference of negligence on the part of Katherine Kenney, who was a guest,

can be drawn from the evidence relied upon to support the instruction.

Defendants further contend that the fact that four people were riding on the front seat of the coupe is itself sufficient to support an instruction on contributory negligence.

This contention was not urged in the court below and was not made one of the exceptions to the refusal of the trial court to give an instruction on the subject. However, if it had been, there is no evidence in the record from which an inference could be drawn that the position of decedent in any way contributed to the accident. Since there was no evidence before the jury which warranted them in finding the decedent guilty of contributory negligence, the court was correct in refusing to submit the question to the jury.

The next assignment of error is based upon the refusal of the trial court to declare a mistrial. The basis for this assignment of error arose during the cross-examination of Sandy Turner. He was asked: "If you have been driving trucks for ten years, Sandy, why didn't you have a permit on this occasion to operate a motor vehicle?" Objection was made and sustained. Thereupon Mr. Ratcliffe said: "If Your Honor please, can I ask him if he did have one?" The judge replied: "He can not be driving without a permit. If he did, he would have been guilty of negligence." The judge and attorneys then retired to chambers and Mr. May for defendants moved for a mistrial on the ground that the question of the cross-examiner was improper. This motion was argued. The trial court ruled the question irrelevant and improper and stated: "I am just going to tell the jury to disregard it." Whereupon Mr. May for defendants said: "Your Honor has already said that and told them that it had no bearing; and I think to tell them anything else will just aggravate the point." The judge agreed to this. We find no error in the ruling of the court. While the question was not proper and should not have been asked, it was not of sufficient importance or weight to mislead or confuse the jury on the issues involved.

The foregoing discussion disposes of the pertinent errors assigned, hence it is unnecessary to discuss other collateral matters raised in the petition and briefs.

For the reasons stated, the judgment of the trial court is

*Affirmed.*