# Richmond

## HOWARD A. HAGAMAN v. MILDRED H. VANACORE.

January 24, 1944.

Record No. 2734.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Parrish, Butcher & Parrish* and *S. L. Sinnott*, for the plaintiff in error.

*Bowles, Anderson & Boyd*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This case arises out of a collision between two motor vehicles travelling in the same direction. One of the vehicles was a tractor-trailer truck operated by Howard A. Hagaman. The trailer had a tank on it containing 2,440 gallons of gasoline. The tractor-trailer, fully loaded, weighed 27 tons. The other vehicle was an Oldsmobile sedan operated by Mrs. Mildred H. Vanacore.

The action was instituted by Hagaman against Mrs. Vanacore for $2,000, covering damages to his tractor-trailer truck and loss of his cargo. Mrs. Vanacore filed a cross-claim against Hagaman, claiming damages in the amount of $10,000. One trial was held, resulting in a hung jury. A second trial was held on January 15, 1943, resulting in a verdict and judgment for Mrs. Vanacore in the sum of $2,500.

Hagaman contends that the trial court should have set aside the verdict on the ground that the physical facts show the accident could not have happened in accordance with the testimony of Mrs. Vanacore, and that her version of the accident, in the light of the physical facts, is incredible. The amount of her damages is not in question.

The accident occurred on July 10, 1942, about 1:30 p. m., on U. S. Route No. 1, about midway between Richmond and Petersburg, Virginia. The highway, at the point of collision, was approximately 40 feet wide, being divided into

four lanes, each approximately 10 feet in width. The two middle lanes have a black top asphalt surface and the two outside are concrete. There is a continuous double white mark painted in the center of the highway.

The vehicles came into contact a few yards to the north of a concrete bridge. The bridge was the same width of the highway, about 40 feet in length, and spanned a small creek at the bottom of a hill. The road was straight for a considerable distance from both ends of the bridge. At the time of the collision, there was a heavy downpour of rain.

The substance of the testimony of Mrs. Vanacore, stripped of the non-essential details, is that, accompanied by a woman passenger, she was driving south at a reasonable speed, in the extreme right or driving lane of the four-lane highway; that about halfway down a hill she looked in her rear view mirror and saw the tractor-trailer coming at a high rate of speed close behind her; that, increasing her speed, she continued a straight course in the right driving lane, remarking to her friend, "What is wrong with this truck; he will be up my back next"; that almost immediately her car was struck in the rear by the truck, a blow heavy enough to cause her to lose control of her car, which then went to the left side of the road across the double white line into the northbound passing lane; that she quickly regained control and undertook to get the car back to the right side of the road, when it was struck again on its right side by the truck; that her car was spun around facing north; and that all she thereafter remembered was the impact of her car striking the posts of the wire guard-rail on the approach to the bridge as it plunged off the embanked road into the creek.

Mrs. Vanacore was thrown from the car, receiving severe personal injuries. Her car landed in the center of the creek on its top, with its four wheels upwards and its front pointing to the north. Her car went through the woven wire guard-rail guarding the approach to the bridge, knocking down five of the seven posts carrying the wire.

Hagaman gave an entirely different explanation of the collision to the jury.

He testified that Mrs. Vanacore was driving down the center of the highway when he first saw her; that he was running between 35 and 40 miles an hour, and she was proceeding very slowly; that he wanted to pass, so he pulled up behind her and blew his horn; that just as he got within 3 or 4 feet of her "she swerved right across in front of me," and "I struck her on the left side, left rear, around the rear, somewhere around the rear, around the left side. I don't know exactly, because it was so much to excite me, and I was so excited, but I struck her—don't know whether the left rear or the left side—somewhere in that vicinity, anyway. So she skidded, the rear of her car skidded around this way. She was crossways the road, and I struck her in between the doors. I know that. She went on across, I know, as I struck her and she seemed to get excited."

He said he could not turn sharp enough to avoid her because the weight of the trailer, its load and the increased momentum of his vehicle was so great on the incline that the surge of the gasoline would have upset it. His air brakes became disconnected and his radius rod was loosened, and he could neither stop the truck nor steer it. He drifted down the road, stopping about 350 feet, the truck then turning over on its side in a ditch.

A State police officer arrived at the scene of the collision about five minutes after it occurred, and questioned Hagaman.

Hagaman told the officer that he hit the Oldsmobile twice, the first time in the rear and the second time on its right side. He then made no claim that he had struck the sedan on its left side or rear because it had suddenly swerved directly in front of him. He admitted that he was running 45 miles per hour down the hill just before the collision, although the legal speed limit, at that time, was 40. No part of his statement given to the officer is in conflict with the testimony of Mrs. Vanacore.

In support of his contention Hagaman, in the trial court and here, asserts that the physical facts disclosed by the photographic evidence show that no injury was done to the front of the truck, and that only the left side of the sedan was damaged; that this evidence is in conflict with Mrs. Vanacore's testimony that she was struck in the rear; that it supports his statement that the sedan swerved in front of his truck; and consequently makes her evidence of the cause of the collision incredible. He further asserts that a clump of dirt found in the southbound passing lane, about 2 feet from the easterly line of the southbound driving lane and 33 feet to the north of the bridge, indicated that the collision took place in the southbound passing lane and not in the southbound driving lane.

The photographic exhibits show that the right front fender, the right door, and the right edge of the bumper of the truck were damaged. They show extensive damage and injury to the left rear fender of the Oldsmobile, to the running board and side of that car immediately to the rear of its left center line. There are also marks of injury across the back of the left rear fender just over the left rear light and on across the back of the car to the edge of the rear body just above the right rear light. The back deck cover was bent in and the lid of the trunk compartment was badly bent and buckled inward. The marks on the rear of the car appear at about the exact height of the truck's bumper. A severe dent appears on the right rear fender immediately above the right rear wheel.

What exact portion of the above damages were occasioned by the second blow from the truck or in the course of its plunge to the creek bottom is a matter of speculation.

As we see it, the physical facts do not contradict Mrs. Vanacore's testimony that her car was first struck by the truck on its rear portion. Her designation of the first point of impact was broad enough to cover such impact as made either at the back of her automobile or on its rear left side. At the least, the blow was to the rear of her seat and, under the circumstances, it was not to be expected that she would

know its exact location, since it was her duty to keep a lookout to the front. Since both the back of her car and its rear left side bear ample evidence of having been struck, the principal question was the location of her car on the highway when it received the first blow. Whether the truck first struck her car immediately in the rear or on the rear left side is immaterial, if she was, as she testified, in the southbound driving lane where she had a right to proceed in safety.

Little significance can be placed on the location of the clump of dirt. We do not know whether it came from the tractor-trailer, the sedan, or whether it fell from one of these vehicles during the first or second collision between them, or from some other car at some other time.

There was sufficient evidence to justify the finding of the jury that Hagaman was negligent. The speed of the heavily loaded tractor-trailer on a downgrade, on a wet highway, in a driving rain, alone affords evidence of a startling lack of due care on his part.

There is nothing inherently incredible in Mrs. Vanacore's evidence. Nor can we say that the circumstances of the collision, as related by her, are contrary to human experience. They are merely contradictory of Hagaman's version, as stated by him in the trial court.

The most that can be said is that the evidence is in conflict. A jury has decided the conflict in favor of Mrs. Vanacore and, under well settled principles in Virginia, its conclusion is entitled to such weight that it cannot be set aside. *Bell* v. *Kenney*, 181 Va. 24, 23 S. E. (2d) 781.

The appellant has had a full, free, and complete trial under the law which he invoked, all that any litigant is entitled to, and it is proper that he should abide the consequences.

*Affirmed.*