# Richmond

## CHARLIE MAUSER AND STANLEY KIRKMAN v. FRANCES M. HEBB, ET ALS.

June 14, 1948.

Record No. 3332.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*W. R. Ashburn*, for the plaintiffs in error.

*Leigh D. Williams* and *Winston H. Irwin*, for the defendants in error.

Buchanan, J., delivered the opinion of the court.

The plaintiff below, Mrs. Frances M. Hebb, was injured in a collision between a taxicab, in which she was riding, and an automobile. The taxicab was owned by Shackelford and driven by Cohen. The automobile was owned by Kirkman and driven by Mauser. Mrs. Hebb sued Cohen and Shackelford, Mauser and Kirkman in the same action. The jury returned this verdict:

"We the jury find for the plaintiff against the defendants Frank L. Shackelford, and Harry Cohen, and fix the damages at the sum of $30,000.00, and we find for the defendants Charlie Mauser, and Stanley Kirkman."

The plaintiff moved to set aside this verdict as to Mauser and Kirkman and to enter judgment against them as well as against Shackelford and Cohen, or else to grant her a new trial on the question of the liability of Mauser and Kirkman. Shackelford and Cohen also moved to set aside the verdict and enter judgment for them and against Mauser and Kirkman, or to grant them a new trial.

The proceedings to that point were before Judge Shackelford, the regular judge of the trial court, who entered an order on July 25, 1946, continuing these motions. Thereafter he became ill and Judge Spindle, sitting for him, heard argument on the motions and by order of May 26, 1947, set aside the verdict in favor of Mauser and Kirkman, on the ground that it was contrary to the evidence, and entered judgment for the plaintiff against them for $30,000, with interest from July 25, 1946, the date of the verdict, as well as against Shackelford and Cohen.

This appeal from that order was granted to Mauser and Kirkman. Shackelford and Cohen did not appeal.

The principal assignment of error is to the action of the court in setting aside the verdict in favor of Mauser and Kirkman, and entering judgment against them. Its validity depends upon whether the evidence convicts Mauser, the driver of the Kirkman automobile, of negligence as a matter of law.

It is a rule, often stated, that a verdict which has been disapproved by the trial judge is not entitled to the same weight on appeal as one that has been approved by him. *Clark* v. *Parker*, 161 Va. 480, 486, 171 S. E. 600, 601; *Burch* v. *Grace Street Bldg. Corp.*, 168 Va. 329, 343, 191 S. E. 672, 678.

This verdict, however, does not fall within that rule, because it has not been disapproved by the judge who tried the case and saw and heard the witnesses. Its force is not weakened by his disapproval. To the contrary, he submitted the question of the negligence of Mauser to the jury for decision, without objection from the plaintiff and with no motion to strike on the ground that no jury question was involved.

In view of the jury's verdict in favor of Mauser and Kirkman, we are required, as was the court below, to consider the evidence in the light most favorable to them, with the conflicts resolved in their favor, and if there was credible evidence sufficient to sustain the verdict, it should not have been set aside. *Mutual Benefit Health, etc., Ass'n* v. *Hite*, 184 Va. 614, 617, 35 S. E. (2d) 743, 744; *Schools* v. *Walker*, *ante*, p. 619, 47 S. E. (2d) 418.

Whether the evidence is sufficient depends upon whether reasonable and fair-minded men may differ as to the conclusion to be drawn from it. If so, the question is for the jury. *Virginia Elec., etc., Co.* v. *Wright*, 170 Va. 442, 446-47, 196 S. E. 580, 582; *Virginia Stage Lines* v. *Duff*, 185 Va. 592, 595, 39 S. E. (2d) 634, 635; *Edgerton* v. *Norfolk Southern Bus Corp.*, *ante*, p. 642, 47 S. E. (2d) 409.

If there has been a plain deviation from right and justice, or if the verdict was plainly wrong, although supported by some evidence, the verdict should have been set aside. *Fedele* v. *National Liberty Ins. Co.*, 184 Va. 528, 35 S. E. (2d) 766. *Smith* v. *Turner*, 178 Va. 172, 16 S. E. (2d) 370, 136 A. L. R. 1251.

This case follows the usual pattern of automobile accident

cases and presents conflicting versions as to where responsibility for the accident rests.

The plaintiff contends it was due to the combined negligence of Cohen, who was driving the taxicab, and of Mauser, who was driving the automobile. Cohen says he was duly careful and the trouble was caused by the negligence of Mauser. Mauser contends it was the other way around.

The accident happened shortly after midnight on January 27, 1946, at the intersection of Mozart avenue with Brambleton avenue, in Norfolk. Brambleton avenue at the point of collision runs approximately east and west and is 36 feet wide. Mozart avenue comes into it from the north and is 26 feet wide. A block to the west of Mozart is Granville avenue, which also comes into Brambleton from the north.

Cohen was driving the taxicab from west to east on Brambleton. He was transporting seven telephone operators, employees of the Chesapeake and Potomac Telephone Company, under a contract between that company and Cohen's employer, Shackelford. Mrs. Hebb, the plaintiff, was sitting on the front seat next to the right-hand door. Miss Vera Bray was sitting in the middle next to Cohen. The other five passengers were in the back seat. The taxicab was a Pontiac sedan weighing between 2,900 and 3,100 pounds.

One of Cohen's passengers lived on Granville avenue, which was on his left, and he meant to turn into that street. However, he was talking and the girls were talking and he inadvertently drove by Granville. His attention was called to his error about halfway between Granville and Mozart, and he then determined to turn from Brambleton into Mozart, the next street on his left, turn around in Mozart and drive back to Granville. The collision occurred while he was endeavoring to execute that plan.

That collision was with the car that Mauser was driving which belonged to Kirkman. In it were Stanley Kirkman, who was the owner and one of the defendants, sitting next to Mauser, and Joseph Kirkman, his brother, sitting on his right next to the door. Their car was a Mercury sedan.

They were going from east to west on Brambleton, meeting the taxicab. Their automobile collided with the taxicab on the north, or the automobile's side, of Brambleton, striking the taxicab about the middle of its right rear fender, where the intake pipe to the gas tank is. The right-hand doors of the taxicab were sprung open, Mrs. Hebb was thrown out and pinned under the taxicab, which was spun around on its wheels and came to rest on the northwestern corner of Mozart, facing south, opposite to the way it was headed when struck, with its rear wheels over the curb and its front wheels in the gutter. Mrs. Hebb was badly hurt.

Brambleton avenue is straight for some distance, both east and west from Mozart avenue, and cars approaching on Brambleton and meeting at Mozart are visible each to the driver of the other for a considerable distance. A map filed in evidence shows that from a point 33 feet west of the center of the intersection of Mozart with Brambleton the visibility is 480 feet to the east along Brambleton to where it turns to the right to go across Campostella bridge. This accident happened at night and the distance of visibility applied to the lights of the meeting cars, not to the cars themselves.

Mrs. Hebb, the plaintiff, testified that as Cohen approached Mozart avenue he was driving fast, but came to a stop before he began to turn, and then proceeded across Brambleton at more than five miles an hour, but she did not know how fast; she thought he made the turn properly. She said Cohen had pulled into Mozart avenue, had come to a standstill, and the cab was sort of easing back when struck by the Mauser car; that she had not seen the Mauser car until the cab had pulled into Mozart; that it seemed then to be about a block away, traveling at a terrific rate of speed, out of control and zigzagging back and forth across Brambleton avenue. Her witness, Miss Bray, testified to about the same effect. Mrs. Hebb testified that Cohen told her later in the hospital that he did not see the Mauser car.

Cohen testified that after passing Granville avenue his intention was to pull into Mozart avenue, make a complete

turn in that avenue and head back into Brambleton; that he saw the headlights of the approaching automobile, not the automobile itself (he also said he never saw the headlights, only their reflection); that the automobile was then around the curve on Brambleton avenue four to five hundred feet away; that he started to go across, thinking he had plenty of time; that he was then kind of in the right center of Brambleton, going three to five miles an hour in low gear; that he did not look toward the approaching automobile any more and was struck when his cab was still moving forward into Mozart, with maybe two feet of it sticking out into Brambleton; that the impact spun his automobile around either one and one-half or two times; that the streets were dry and in good driving condition. There was evidence that he had previously said he was going ten miles an hour across Brambleton. He said he could not judge the speed of the approaching automobile from the reflection of the lights, but judging from the impact it was doing around sixty-five miles an hour.

The evidence offered by Mauser and Kirkman came from the three occupants of the Mauser car and three passengers in the taxicab.

Mauser testified that as he was driving west on Brambleton he saw the taxicab coming and it turned right in front of him when it was not more than 30 feet from his car; that there were no other automobiles on the street; that as they came over the Campostella bridge he would say they were going approximately 35 or 40 miles an hour; that as they came off the bridge there was a sign near the filling station showing a twenty-five mile speed zone and when he came to that he let up on the gas and proceeded at 25 or 30 miles an hour; that there was no indication that the taxicab was going to make a left turn until it started to do so, as in meeting a car at night you can see the lights but you can't tell what he is going to do; that the taxicab pulled right out in front of him; that he then put his brakes on "easy," cut to his left and tried to miss the cab, the front wheels of which at that time were just about even

with the north curb of Brambleton and the rear was near the middle of the street, about five feet north of the center line of Brambleton, as he would guess; that he did the best he could to avoid striking the cab. A juror asked him how many times the cab turned around and he replied that he could not say and did not think anybody else could, because when an accident like that happens you can't count the turns. He said that he did not at any time swerve to the right as he drove along Brambleton; that the collision threw him against the steering wheel and knocked the breath out of him for a few seconds.

Stanley Kirkman testified that the dash lights were out and he could not see how fast they were going; that at a former time in another trial growing out of the accident he had stated that his car was going 35 to 40 miles an hour; that in fact after they crossed the bridge he did not have any impression as to how fast they were going, but he was not conscious of any rapid rate of speed, and if Mauser had been driving too fast he would have told him to slow down; that as they were approaching the cab it made a short turn in front of them when they were about 50 feet from it; that Mauser tried to turn the car to the left to avoid a collision, but did not have enough room; that after the collision their car did not travel more than 20 feet; that as they drove along Brambleton he did not notice any swerving by their car until the cab turned in front of them; that as they struck, his head hit the windshield and he was dazed a little; that there was no appreciable time between the time when the cab turned and when the two cars collided; that they hit just about the time the cab turned; that they were driving about in the middle of their half of the street.

Joseph Kirkman, who was sitting next to the right-hand door, said he was not looking straight ahead at the time, but was kind of looking around and when he glanced back the cab was right in front of them. He holloed, "Look out, Charlie, you are going to hit him," but that he did not more than get it out of his mouth before they hit; that when he

saw the cab it was about 30 feet in front of them; that Mauser pulled to the left, put on his brakes and turned to miss it, otherwise he would have hit it broadside; that he judged the speed of their car was from 30 to 35 miles, but that was a guess—he could not say exactly, but they were not going too fast; that if the cab driver had put out his hand to indicate that he was going to turn, they could not have seen it because of the lights. A juror asked him whether they struck the cab before or after it was in the intersection; he replied that the cab was entering the intersection but had not gotten into Mozart; that he would say the bumper of the cab was even with the curb and most of the cab was out in Brambleton.

Miss Sawyer was riding on the back seat of the cab on the right-hand side. She was the passenger who lived on Granville, into which the driver had meant to turn. They had practically completed their turn into Mozart, she said, when she first looked to the right and saw the Mauser car; that the car was maybe 30 or 40 feet from the cab when she saw it (on a former trial she put this distance at about 25 feet), and the collision then happened very quickly; that the cab was going ahead when they were struck. On cross-examination she said Cohen was going maybe eight miles an hour in making his turn; that she would say it was a long turn; that she could not estimate the speed of the Mauser car but it was going very fast and definitely swerving.

Mrs. Estelle Pittman was on the left of the back seat of the cab with Miss Jones sitting on her lap. She said they were fixing to make the turn when she saw the Mauser car and she knew they were going to be hit; it looked to her to be not more than three or four yards from them—it was right up on them; answering a juror's question, she indicated the distance in the courtroom.

Mrs. Edna Noel was sitting on Miss Sawyer's lap on the right in the back seat facing to the front of the cab. She first saw the headlights of the Mauser car, she said, when it rounded the curve; after Cohen slowed down to make his turn, she saw the car, or its headlights, and it seemed

to sway and lose control, and she did not remember what happened after that.

Defendants Cohen and Shackelford introduced two city officers who testified that they examined the scene after the accident, and that the main part of the dirt, glass and other debris was five or six feet south of the north curb of Brambleton and about the same distance west of the east curb of Mozart extended.

Soon after the testimony began, the jury were taken for a view of the scene of the accident. The record shows an unusual degree of participation by the jurors afterwards in questioning the witnesses. Upon weighing the evidence, aided by their view, they concluded that the accident was due solely to the negligence of Cohen, and on careful study of the testimony we cannot say their verdict was plainly wrong, or that reasonable men might not differ as to the right conclusion.

That Cohen was negligent is not an open question on this appeal. The adjudication of his negligence has become final. As the case is now, it has been established that Cohen, driving at night, when the position of cars can be judged of only by their lights, turned suddenly into the path of the approaching Mauser car, when the latter was too close upon him to avoid the collision.

The claim that Mauser was guilty of contributing negligence is predicated on his unlawful speed, failure to keep a lookout and have his car under proper control. The matter of speed is the only real question now in the case. To overrule the finding of the jury in Mauser's favor it must be said that the evidence establishes Mauser's unlawful speed as a matter of law; that is, that reasonable men should not differ about it on the evidence.

The accident happened at night. Nobody saw it except the occupants of the two cars. Those in the cab could only judge of the speed of the Mauser car in the few intervening seconds between the time they saw its lights and the time of the impact. They were limited to the same opportunity to observe the alleged swerving or zigzagging of the Mauser

car. The occupants of the Mauser car testified that it did not zigzag and that the only swerving was that when Mauser swerved to the left in his effort to avoid the collision.

The occupants of the Mauser car estimated their speed at from 25 to 35 miles an hour. The learned judge of the trial court thought that the evidence for Mauser and Kirkman was contradicted by the physical facts and was legally incredible. He based that conclusion largely on mathematical calculations. His result, however, involved the use as fixed factors of points about which the evidence was conflicting and which the jury were not bound to accept as proved.

In his calculations the place of impact was said to be approximately five feet from the north curb of Brambleton. That was where the main part of the debris was found, but that did not, as a matter of law, fix the point of collision as against the testimony for these defendants that the Cohen cab, assumed by the trial court to be 16 to 18 feet long and six feet wide, was its full length crosswise of the north half of Brambleton, with its rear end not more than five feet from the center of that street.

The calculation also accepted it as true that Cohen made a long left turn at a speed of three to five miles an hour from the southern half of Brambleton into the east half of Mozart, placed at a maximum of 30 feet and a minimum of 24 feet, with a time element of two to four seconds, with the Mauser car covering a minimum distance of 75 feet and a maximum of 192 feet during that time.

But there was evidence from Cohen himself that he had been driving about the center of his right half of Brambleton and that when he saw the lights of the Mauser car he was getting ready to make his turn and he thought maybe his front wheel was then across the center line of Brambleton. There was also evidence that he made a short, abrupt turn at a speed as much as ten miles an hour into the path of the Mauser car. These variations as to positions, speeds and distances would, of course, seriously affect the result of mathematical calculations and make a situation in which

reasonable men might well differ as to the proper conclusions to be drawn from the evidence. The accuracy and credibility of those from whom the evidence came were questions for the jury to determine. *Bell* v. *Kenney*, 181 Va. 24, 23 S. E. (2d) 781.

Deductions as to speed from the condition of the two automobiles were also a matter for the jury. They had before them the pictures that are before us, showing that condition after the collision. While Cohen testified the impact spun his cab around either one and one-half or two times, that was obviously speculation. After the collision the cab faced in the opposite direction from the way it was going. It could not occupy that position by being turned completely around twice.

It cannot be said as a matter of law that the Mercury sedan, driven by Mauser, could not have done the damage if it had been traveling at 25 miles an hour, a *prima facie* lawful speed; particularly in view of the evidence that it stopped within 20 feet after striking the cab and none of its occupants was injured beyond being shaken up.

To entitle the plaintiff to recovery against Mauser and Kirkman, the burden was upon her to establish not only that Mauser was negligent, but that his negligence was a proximate cause of the collision. If it be conceded that he was exceeding the speed limit at the time of the collision, the plaintiff must also prove there was causal connection between that act and the collision.

" * * * The general rule, however, at least, in this State, and we think in most jurisdictions, is that to constitute actionable negligence there must be a direct causal connection, other than the mere violation of the statute, between the prohibited conduct and the injury; and whether such causal connection does exist is usually a question for the jury. * * * ." *Edwards* v. *Laurel Branch Coal Co.*, 133 Va. 534, 555, 114 S. E. 108, 115. *Powell* v. *Virginian Ry. Co.*, *ante*, p. 384, 46 S. E. (2d) 429; *Hamilton* v. *Glemming*, *ante*, p. 309, 46 S. E. (2d) 438.

There was no traffic on the street at the time of the collision other than the automobile and the cab. The speed limit at the place of collision was 25 miles an hour. Mauser estimated his speed at 25 or 30 miles an hour. We do not see facts or circumstances in this record to render his evidence incredible. The jury could have accepted it. But if the jury concluded that he was going faster than that, still whether his excess speed was a factor contributing to the collision was also a question for them to decide. It could not be said with the certainty necessary to make it a legal question that the accident would not have happened if the Mauser car had not been exceeding the speed limit. The jury have found that the negligence of Cohen was the sole proximate cause of the accident, and we think it was error to hold that there was not sufficient evidence to support their verdict.

This conclusion makes it unnecessary to discuss the other two assignments of error.

The judgment complained of as to Mauser and Kirkman is reversed, the verdict in their favor is reinstated, and final judgment entered thereon.

*Reversed in part, affirmed in part, and final judgment.*