# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## Joseph Burrell, Et Als. &C. v. Martha Burrell, Administratrix, &C.

April 21, 1952.

Record No. 3909.

Present, All the Justices.

.The opinion states the case.

*Kenneth G. Cumming* and *M. Wallace Moncure, Jr.*, for the plaintiffs in error.

*Kearney & Cofer*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Martha Burrell, administratrix of the estate of Charles Albert Brown, sued Joseph Burrell, and J. H. Ennis and W. E. Ennis, partners trading and doing business under the trade name of Frost-Cole Fuel Company, for the wrongful death of Charles Albert Brown, an infant three years of age.

The case was tried in the Circuit Court of Elizabeth City county and on June 29, 1950, the jury returned a verdict in favor of the defendants. On motion of the plaintiff and over objection and exception of defendants the verdict was set aside and judgment entered thereon against the defendants. The court then ordered a jury empaneled for the sole purpose of assessing the damages due the plaintiff and a verdict in the sum of $5,000 was returned, upon which final judgment was entered on January 17, 1951. To this judgment we granted a writ of error.

The sole assignment of error involved is addressed to the action of the court in setting aside the verdict of the jury rendered on June 29, 1950, and holding the defendants guilty of negligence as a matter of law. This assignment makes it necessary to review some of the evidence in the case.

Joseph Burrell, one of the defendants, was employed as a truck driver by Frost-Cole Fuel Company, the partnership co-defendant. His duty was to deliver coal to customers. While so engaged on February 15, 1950, he was proceeding south on Back River road, in the city of Hampton, driving a Dodge pick-up truck. Winston Austin was riding with him at the time as a guest. Burrell's destination was the post office in Hampton.

Back River road intersects Queen street which is one of the important streets in the city. Queen street runs east and west and Back River road runs north and south. The intersection of the two streets forms right angles, however Back River road does not continue directly across Queen street, there is an off-set causing the southern entrance of Back River road into Queen street to be approximately 20 feet east of the northern entrance.

The four corners of the intersection are occupied by buildings extending to the street lines. The distance between the wall of the building on the northwest corner and the wall of the building on the northeast corner is 46 feet. The hard surfaced driving portion of Back River road is approximately 26 feet

wide, leaving a shoulder or space between each side of the driving surface and the buildings of approximately 10 feet. Both Queen street and Back River road carry two-way traffic.

When Burrell approached the intersection the traffic light was red and he brought his truck to a stop on the right hand side of Back River road. This light is suspended near the center of Queen street. Burrell's destination would have caused him to go east on Queen street. When the red light changed to green, continuing his journey, he ran over the three-year-old child.

The theory of the plaintiff was that Carrie Sellers, a child seven years of age, and the three-year-old boy "Butch", were on their way to Drummond's store which was located on the northeast corner of the intersection of Back River road and Queen street, that the children were walking on the sidewalk and when they came to Back River road, plaintiff's brief states: "The two children observing that the stoplight was red and traffic stopped, proceeded in line with a continuation of the sidewalk from curb to curb in an *easterly* direction. As the decedent, Charles Albert Brown, aged three, was completing his crossing from *east* to *west* in the pedestrian line reserved for pedestrians, the light changed from red to green and the defendant driver, Joseph Burrell, immediately started off without effectively ascertaining that the way was clear, hitting the decedent and rolling him under the right front wheel, crushing his brain", etc. (Italics supplied)

Plaintiff's brief further states: "It is uncontradicted evidence that there was no obstruction to prevent the driver from seeing the decedent child; * * * and that the decedent had proceeded in the pedestrian lane when the defendant operator, Joseph Burrell, failed to yield the pedestrians, and particularly the decedent, the right of way."

Apparently plaintiff is confused as to the direction in which she contends the child was traveling. Drummond's store being on the northeast corner of the intersection, the child, according to plaintiff's contention, necessarily was proceeding from west to east.

Plaintiff's witnesses do not bear out the assertions in the brief. There is conflict throughout the evidence as to when and how the child got into the path of the truck. Lillian Henderson, plaintiff's first witness, says that she was talking to Thomas Armistead in her restaurant located on the southwest corner of

the intersection, that when she first saw the child he was right in front of the truck, "just about middle way of the bumper, right up against the truck." She further said that the right front wheel ran over the child, that the child wasn't much taller than the bumper, that she saw no other children there and that the driver could not have seen the child "where he was when I first looked out, because he was right in the middle of the truck". This witness does not attempt to say when or how the child got there.

Plaintiff's witness Courtney says that he stopped at the intersection as he was going east on Queen street, that "the green light gave the other fellow in the truck the right of way, and he started off. I saw something there in front of the truck. At that time I heard a man holler. I whirled my head to the left like that (indicating). * * * I saw this little kid. The front wheel had passed over him then, and he was about between the two wheels on the right side * * *". On cross-examination he said when he first saw the child he was between the front wheel and back wheel; that he did not know where the child came from.

Plaintiff's witness, Carrie Sellers, the seven-year-old girl who was supposed to have had decedent in charge testified that they were going to Drummond's store (located on the northeast corner) for Miss Hattie with whom "Butch" lived. The court asked her the following questions:

"Q. Now, you tell me what happened when you got up there to Lee's corner.

"A. When I got up there, he was beside me, and he took and ran across the street, and the red light was on. When he ran across the street, the green light come on.

"Q. Yes; and then what happened?

"A. Then he got run over.

"Q. All right, what happened then?

"A. I ran home and told Miss Hattie."

On cross-examination Carrie admitted that she did not look at the light, that the reason she said it was red or green was based upon when the truck stopped and when it started.

The next witness was Thomas Armistead, 78 years of age. He was in the restaurant located on the southwest corner, across the street, talking to Lillian Henderson. Armistead said that when he first saw the little boy "it looked to me like he was resting up on the bumper. * * * When I seen him again, why, of

course, the car had gone by then. At that time I suppose the man hollered. I suppose the car had run over him to a certain extent." This witness does not attempt to say where the child came from or how he came to be resting on the bumper. He says the truck "couldn't have went over 15 or 20 feet" after the child was struck.

James Upshur Wise, called by the plaintiff, said he did not know his age but explained that he was old enough to get an old-age pension. It is hard to reconcile his evidence. He states that he had been on the corner one-half hour and that the little boy had been there an hour. He says he was on Lee's corner and that about an hour before the accident happened both the little boy and Carrie Sellers had been over on the (northeast) corner, near him, that before the accident happened the child was on the northwest corner, "When he (the truck driver) stopped, the little child was nowhere near. After a while, a little girl, she was looking for the little boy." Then he said that the little boy didn't move until the light was green and when the truck pulled out the child was right at the wheel. When asked if there was anything to obstruct the driver's view he replied: "The way I looked at it, counselor and gentlemen, this child was too low. But those people on that (northwest corner) side ought to have seen the child. Then after the man ran over it, they hollered."

On cross-examination the witness was asked:

"Q. When did you first see this child that was struck by the truck?

"A. The only time I seen him was when he run over here. The little boy was looking for the girl. I thought he went back that way. Do you understand? Here is the truck, and he was in front, but I thought he went back in the store."

The court asked:

"Q. In which store?

"A. I was on the Drummond's store (northeast) side. I thought the little child was in Griffin's store (northwest corner)."

State Trooper S. J. Smith, Jr. described his investigation of the accident and the surrounding scene. He testified that defendant Burrell accompaned him from the hospital to the scene with Winston Austin, that Burrell stated that he had stopped at the intersection for the red light and that "there were a few (children)—that there was a group that was crossing from east

to west'' who had started across before the light changed for him to go, and that he waited for them to continue on and when the way appeared clear he continued on his mission. He felt a bump and got out to look, saw the child and carried it to the hospital.

Martha Burrell, mother of the child, who is no relation to defendant Burrell, was not present at the scene of the accident. She testified that the deceased child was born May 8, 1946, before she married James Robert Burrell, that the child took her maiden name of Brown, and that she had permitted Hattie McNeal to keep him since he was fifteen months old.

This evidence concluded the plaintiff's case and a motion to strike the evidence was overruled, to which action of the court defendants excepted.

Defendant, Joseph Burrell, the driver of the truck, testified that he was 23 years of age, that he was now working for the Army Air Installation Office, Langley Field, Virginia, that he was driving for Frost-Cole Fuel Company on the occasion in question, had worked for this firm for several years and had left their employ on account of lack of work. That on February 15, 1950, between 4:00 and 4:10 p.m. he approached the intersection of Queen street as he was driving south on Back River road en route to the post office. He had permitted Winston Austin, who wanted to go down town, to ride with him. He stopped his truck at Queen street because the traffic light was red, while waiting for the light to change he saw two young girls between eight and ten years of age coming up Queen street from the east, going west; these girls crossed the intersection without incident, that they were much taller than Carrie Sellers and that he was positive Carrie Sellers was not one of the girls. He saw no other children at the intersection and when the light changed to green, after looking to the left and the right he put the truck in first gear and started to go left down Queen street, that he felt a bump on the right rear wheel and immediately stopped, he got out of the truck, saw the little boy lying in the road, rushed back, picked him up and carried him to the hospital where he died within a few hours.

On cross-examination Burrell recalled telling State Trooper Smith how the accident happened. He did not recall referring to the two girls who passed in front of him as ''a group'' of children. He was asked, ''You were not looking down, looking for

pedestrians—small children; is that right?", and he replied, "I was looking for everything."

Winston Austin, who was sitting on Burrell's right in the truck, corroborated Burrell in his account of the accident with the exception of the direction in which the two girls were walking. Austin testified that these girls passed the intersection going from west to east along Queen street. Neither Austin nor Burrell saw Carrie Sellers at the scene and Austin testified that the two girls he saw pass were much larger than the Sellers child. He said that he saw no one on the northwest corner to his right but did see James Upshur Wise standing on the northeast corner.

Lewis Barkus testified that he was 59 years old and worked at the shipyard, that he was standing on the northwest corner, he saw the truck stop at the light, that he was looking across Queen street and "just as I turned around to look, I looked down in front of the truck and there was a little boy standing right in the center of the bumper. He had his hand up on it, patting it. At that time I got ready to holler, and I looked up at the cab—at the driver. He was watching the light, and the light changed, and he pulled off." The witness said the front wheel went over the child and he hollered and the truck stopped and the driver took the child to the hospital. Barkus said the truck started off slowly, that he saw no other children at the scene. At one point in his examination he says: "Yes, sir. I saw the truck when it came up to the light. The light said 'stop' and he stopped. Then I looked around somewhere else, and, when I looked around again, the little boy was in the center of the bumper. * * * I didn't know where he came from, and I didn't know where he was going. When I saw him he was at the middle of the bumper." He said the child was "just about a little tiny bit higher than the bumper on the truck. How tall that is I don't know."

Jesse Golden testified that he was 45 years of age and was standing on the northwest corner of the intersection, that the little boy was playing on the street to his right, close to the building. In answer to the following questions on direct examination he said:

"Q. How long had he (the child) been there?

"A. Just about four or five minutes, I guess, as near as I can get at it.

"Q. Did you see any other child with him at the time?

"A. No, sir, not a one.

\*    \*    \*    \*    \*    \*

"Q. Do you know what it (the truck) stopped there for; why it stopped?

"A. It stopped on account of the signal light.

\*    \*    \*    \*    \*    \*

"Q. When the truck started up what did the child do? Where was the child?

"A. I wasn't paying that much attention right then. \* \* \* When I turned my head around again, the child was in front of the bumper, in front of the truck.

"Q. Do you know when the child got from your right hand side over in front of the bumper?

"A. No, I certainly don't, or I would have stopped him.

"Q. Did you see him when he got from that place to where you were?

"A. No.

"Q. To the front of the bumper?

"A. I certainly didn't. \* \* \*"

On cross-examination the witness testified:

"Q. Did you see the front wheel go over the child?

"A. Yes, sir.

"Q. What?

"A. I seen it when the wheel went over it.

"Q. Which wheel went over it?

"A. The back wheel.

"Q. The back wheel went over it?

"A. That is right.

"Q. And the front wheel did not go over him?

"A. No, sir.

"Q. Did the child run under the right rear wheel? Is that what you say?

"A. Yes, sir.

"Q. That is how it happened?

"A. That is exactly how it happened."

The facts were submitted to the jury under instructions fully covering the plaintiff's theory of the case and the jury found its verdict for the defendants. As stated before, the sole question for decision is: Was it error for the trial court to set aside the jury's verdict and enter final judgment for the plaintiff? This question must be answered in the affirmative.

█ There is substantial conflict in the testimony as to how this accident happened. It is established that the truck ran over the child, but how the child came in contact with the truck is in serious conflict. There is no evidence that Burrell saw the child, and it was a question for the jury whether, by the exercise of reasonable care, he should have seen him. The plaintiff's own witnesses put the child in front of the truck where they admit it could not have been seen by the driver. A majority of the witnesses do not attempt to say how the child got in this position. Certainly reasonable men may have differed as to how the accident happened, and in such an instance the verdict of the jury is conclusive. *Gregory* v. *Seaboard Air Line R. Co.,* 142 Va. 750, 128 S. E. 272; *Mauser* v. *Hebb,* 187 Va. 876, 48 S. E. (2d) 257; *Murray* v. *Smithson,* 187 Va. 759, 48 S. E. (2d) 239; Burks Pleading and Practice, Fourth Edition, § 325, page 609.

We have repeatedly held that "it is not sufficient that the judge, if on the jury, would have rendered a different verdict. It is not sufficient that there is a great preponderance of the evidence against it. If there is conflict of testimony on a material point, or if reasonably fairminded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court or by this court, or if improperly set aside by the trial court, it will be reinstated by this court." *Hoover* v. *Neff & Son,* 183 Va. 56, 62-63, 31 S. E. (2d) 265.

As stated by Mr. Justice Buchanan in *Edgerton* v. *Norfolk Southern Bus Corp.,* 187 Va. 642, 651, 47 S. E. (2d) 409, "The credibility of the witnesses, their opportunities to observe, the weight of their testimony, and the reasonable inferences to be drawn therefrom were questions for the jury to decide." The jury had the right to believe defendant Burrell's account of how the accident happened and they had the right to believe Jesse Golden when he said the front wheel of the truck did not strike the child, that the child ran under the right rear wheel of the truck and "that is exactly how it happened". The jury was under no obligation to adopt the theory of the plaintiff in view of the uncertain, conflicting testimony presented in the case.

█ In *Bly* v. *Southern Ry. Co.,* 183 Va. 162, 175, 31 S. E. (2d) 564, 570, 172 A. L. R. 584, we approved the statement in

*Tennant* v. *Peoria, etc. Ry. Co.*, 321 U. S. 29, 64 S. Ct. 409, 88 L. ed. 520, which here applies:

"It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. *Washington, etc. R. Co.* v. *McDade*, 135 U. S. 554, 571, 572, 10 S. Ct. 1044, 34 L. ed. 235, 241, 242; *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U. S. 54, 68, 63 S. Ct. 444, 87 L. ed. 610, 618, 143 A. L. R. 967; *Bailey* v. *Central Vermont Ry.*, 319 U. S. 350, 353, 354, 63 S. Ct. 1062, 87 L. ed. 1444, 1447, 1448. That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

In the instant case there was ample evidence to support the jury's verdict in favor of the defendants and the trial judge erred in setting it aside.

For the reasons stated the judgment of the trial court entered on the verdict assessing damages for the plaintiff is reversed and the jury's verdict in favor of the defendants is reinstated and final judgment is here entered thereon.

*Reversed and final judgment.*