Charles S. CALLANDER, As Administrator of the Estate of Alexander S. Callander, deceased, Appellant,

v.

HUNTER MOTOR LINES, INC., and

Charley Henry Battle, Appellees.

No. 8965.

United States Court of Appeals
Fourth Circuit.

Argued June 12, 1963.

Decided Jan. 14, 1964.

Nathan L. Silberberg, Washington, D. C., for appellant.

Douglas A. Clark, Vienna, Virginia, for appellees.

Before BRYAN and BELL, Circuit Judges, and WINTER, District Judge.

WINTER, District Judge.

A wrongful death action, arising out of a motor vehicle collision on June 8, 1961, at Boyce, Virginia, resulted in a jury verdict for defendant. From the judgment entered thereon this appeal is taken.

Suit was instituted by the Administrator of the Estate of Alexander S. Callander, deceased, who had been the driver of an MG sports car which had a head-on collision with a tractor-trailer, owned by appellee Hunter Motor Lines, Inc. and

driven by appellee Battle. Appellees were charged with negligence in two respects: first, that the tractor-trailer was operated in violation of the laws of the Commonwealth of Virginia, in that it was operated to the left of the center line of the road in the direction in which the tractor-trailer was moving and, second, that certain regulations of the Interstate Commerce Commission had been violated, in that appellee Battle was permitted to drive the tractor-trailer in excess of the number of hours permitted by law.

At trial the evidence disclosed that after the cars collided the sports car caught fire and its driver died. Appellee Battle was trapped in the cab of the tractor, but he extricated himself and, when he saw the sports car in flames, attempted to obtain a fire extinguisher in the cab of the trailer, but he was unsuccessful and could give no aid or assistance to the deceased. In support of appellant's theory of negligence, the appellant called as witnesses appellee Battle, whom he questioned about the number of hours he had driven, but did not question about how the collision took place, and a certain Mr. Horst W. Wuestenhagen, whose opinion evidence as to the point of impact between the two vehicles with reference to the center of the road was tendered and refused. Although the accident had been investigated by a member of the Virginia State Police, appellant did not call the officer as a witness. At the conclusion of the plaintiff's case, appellees moved for a directed verdict, Rule 50 F.R.Civ.P., which was denied by the lower court because photographs of the positions of the two vehicles after the collision indicated that the tractor-trailer had come to rest on the left side of the highway, over the center line, in the direction in which it was moving. Appellees then presented evidence and renewed their motion at the close of all of the evidence, but it was again denied.

We are asked to review four errors claimed to have been committed by the lower court during the trial: (1) refusing to admit the opinion evidence from Mr. Wuestenhagen; (2) refusing to submit to the jury the question of whether a violation of certain regulations of the Interstate Commerce Commission constituted negligence on the part of the appellees; (3) permitting a police officer, over objection, to testify as to the explanation of the accident given by appellee Battle an hour after the accident; and (4) refusing to instruct the jury that the credibility of a police officer is unaffected solely because he is a police officer. The third and fourth alleged errors occurred during the appellees' case, and at the conclusion of the evidence, respectively. While the second alleged error also occurred at the conclusion of the entire case, an aspect of it must be decided in the view which we take of the appeal. Because a review of the record convinces us that the appellees' motion for a directed verdict should have been granted at the conclusion of the appellant's case we affirm, without reaching the third and fourth alleged errors.

■ An analysis of the evidence comprising the appellant's case shows that the only evidence of negligence in the operation of the tractor-trailer to the left of the center line of the roadway in the direction in which it was moving consists of the evidence that, after the collision had occurred and the vehicles came to rest, the tractor-trailer was across the middle of the road on the left-hand side of the highway. While, in some instances, this fact may give rise to an inference of negligence, the law of Virginia, which we must apply, is specific that the fact that after an accident a vehicle " * * * may come to rest on the left-hand side of the road is not indicative that the collision which caused the driver to lose control was due to his negligence," Fletcher, Adm'r. v. Horn, 197 Va. 317, 322, 89 S.E.2d 89, 93 (1955); Ken v. Harman, 183 Va. 670, 676, 33 S.E.2d 197, 199 (1945).

■ Thus, there was no legally sufficient evidence of negligence resulting from a violation of the traffic laws of the Commonwealth of Virginia unless there

was error on the part of the lower court in refusing to permit Mr. Wuestenhagen to state his opinion as to whether certain marks found in the highway after the accident were made by a truck or by a passenger car, that the marks were caused by the application of brakes and, based upon these marks, that the point of impact between the two vehicles was on the side of the road left of the center line in the direction in which the tractor-trailer was being operated.

Mr. Wuestenhagen had previously testified that he was the manager of an automotive repair business, and that he had been working in and at automotive repairs for a total of fifteen years. There was no showing that this witness had any experience or expertise in the investigation of accidents or the examination of skid marks or other markings on a highway, and a reconstruction of the events which had caused them. Unlike the testimony of the witnesses in Een v. Consolidated Freightways, 220 F. 2d 82, 87 (8 Cir. 1955), and Campbell v. Clark, 283 F.2d 766, 769, 770 (10 Cir. 1960), the record fails to show that this witness had any qualification in the area in which his opinions were sought to be expressed. Under such circumstances, it was proper for the district judge to have excluded the proffered opinions, Chesapeake & Ohio Railway Co. v. Schlink, 276 F.2d 114, 116 (6 Cir. 1960).

With regard to negligence arising out of a violation of Interstate Commerce Commission regulations, appellant relies upon § 195.4 of the Interstate Commerce Commission Regulations, 49 C.F. R. § 195.4, in effect at the time of the accident, but subsequently revoked (27 F.R. 3553—April 13, 1962). This regulation prohibits a carrier from permitting or requiring a driver employed or used by it " * * * to drive or operate for more than 10 hours in the aggregate in any period of 24 consecutive hours, unless such driver be off duty for 8 consecutive hours during or immediately following the 10 hours aggregate driving and within said period of 24 consecutive hours * * *."

In order for the question to arise of whether a violation of this regulation could serve as a basis for a finding of negligence, it must appear that a driver drove or operated for more than 10 hours within a 24 hour period. No evidence in appellant's case established this prerequisite.

The evidence showed that appellee Battle left Union City, Pennsylvania, at 6:00 A.M. on June 7, 1961, and that the accident occurred at approximately 6:00 A.M. on June 8, 1961, the following day. The evidence also shows that after leaving Union City appellee Battle arrived at Breezewood, Pennsylvania, at 10:00 P.M., and that he had slept or rested en route, and that he did not leave Breezewood, Pennsylvania, until 3:00 A.M. on the morning of June 8. The evidence further disclosed that the trip from Union City, Pennsylvania, to Breezewood, Pennsylvania, is anywhere from less than 200 to 250 miles in length, and that it requires from 6 to 7 driving hours. The conclusion is inescapable that of the total elapsed time from Breezewood to Union City, amounting to 16 hours, driving time was 6 to 7 hours, leaving a minimum of non-driving time of 9 hours. These 9 hours must be added to the 5 hours spent at Breezewood, so that appellee Battle spent at least 14 hours resting within the crucial consecutive 24 hour period. Thus, any finding that appellee Battle spent more than 10 hours on duty would be pure speculation. The lack of evidence from which a violation of the regulation could be found serves to distinguish the case at bar from New Amsterdam Casualty Co. v. Novick Transfer Co., 274 F.2d 916 (4 Cir. 1960), where there was evidence from which the jury could determine that there had been a violation of the regulations.

■ In addition to an evidentiary basis to support a finding of negligence arising out of a violation of the regulation, to go to the jury, appellant would be required also to offer some evidence from which a jury could determine that the violation of the regulation was a proximate cause of the accident, Shoe-

maker v. Andrews, 154 Va. 170, 152 S.E. 370, 371 (1930); W. B. Bassett & Co. v. Wood, 146 Va. 654, 132 S.E. 700, 702, 703 (1926); see also, White v. Gore, 201 Va. 239, 242, 110 S.E.2d 228, 231 (1959); Smith v. New Dixie Lines, 201 Va. 466, 111 S.E.2d 434, 437 (1959); Mauser v. Hebb, 187 Va. 876, 48 S.E.2d 257 (1948). A careful reading of the record establishes a total lack of evidence in appellant's case to suggest that the appellee Battle was tired or asleep at the time of the accident, let alone that these factors caused or contributed to the happening of the accident.

For these reasons, a directed verdict should have been entered, at the close of appellant's case, and the judgment of the lower court is

Affirmed.